IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                                        |   |                                 |
|----------------------------------------|---|---------------------------------|
| BELYNDA L. BOWMAN-COOK                 | : |                                 |
|                                        | : |                                 |
| v.                                     | : | Civil Action No. DKC 14-1877    |
|                                        | : |                                 |
| WASHINGTON METROPOLITAN AREA           | : |                                 |
| TRANSIT AUTHORITY, et al.              | : |                                 |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment case is the motion for summary judgment filed by Defendant the Washington Metropolitan Area Transit Authority ("WMATA"). (ECF No. 52). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be granted.

**I. Background[1]**

**A. Plaintiff Applies for a Promotion**

Plaintiff Belynda L. Bowman-Cook ("Plaintiff") was hired by WMATA on January 20, 2000, as a traffic clerk. (ECF No. 66-2, at 1). Shortly thereafter, Plaintiff was selected to participate in a WMATA skills program, which consisted of school and on-the-job training. (ECF No. 2, at 3). Plaintiff

---

[1] Unless otherwise noted, the facts outlined here are undisputed and construed in the light most favorable to Plaintiff.

completed the skills program in 2002 (ECF No. 66-3, at 1), and begin working as a D-level Electrical Mechanic.

In late 2007, WMATA had one or more open positions for an AA-level Electrical Mechanic ("Position 006517"). (ECF No. 66-2 ¶ 5). As a D-level Electrical Mechanic, Plaintiff was required to pass tests on the C, B, A, and AA levels to qualify for an AA-level job. (ECF No. 66-7, at 1). These tests are administered in succession; a test-taker may only take the next test after she passes the one below it. On November 13, 2007, Plaintiff took and passed the C and B tests, but failed the A test, and was not allowed to proceed to the AA test. (ECF No. 66-2 ¶¶ 5, 7). On December 3, Plaintiff went to the testing site planning to retake the A test and to take the AA test. The WMATA employee administering the tests, Rail Car Maintenance Training Instructor James Loos, told Plaintiff that she could not rely on her previous C and B-level tests, and that she would have to take all of the tests, the C, B, A, and AA tests, that day in order to be eligible for the AA-level position. (ECF No. 66-7, at 1). Plaintiff told Mr. Loos that he was mistaken and refused to retake the C and B tests. (*Id.*). Mr. Loos agreed to let Plaintiff take the A and AA tests on the condition that her results would be invalidated if he was correct that all of the tests had to be taken in a single session. (*Id.* at 2). Plaintiff passed both the A and AA tests, but her supervisor E.

Rod Spencer later confirmed that Mr. Loos' understanding of the testing procedure was correct, and Plaintiff's test results were invalidated. (*Id.*). Thus, Plaintiff was not considered for Position 006517.

Position 006517 was eventually awarded to Anthony Boykin. According to Plaintiff, Mr. Boykin was a C-level Mechanic before he was awarded Position 006517. (ECF Nos. 66-2 ¶¶ 5,7; 66-17, at 1). Mr. Boykin passed the B test on April 11, 2007, the A test on October 7, and the AA test on November 13. (ECF No. 66-17, at 1). Mr. Boykin was awarded the position even though he did not pass the B, A, and AA tests during one testing period. (*Id.*). Plaintiff also affirmed that three other men were selected on April 19, 2008, to fill similar vacancies without having to pass the requisite tests in a single testing period as Plaintiff was required to do. (ECF Nos. 66-2 ¶ 6; 66-17, at 1-2). Plaintiff filed a grievance related to the incident, which was denied in January 2008. (ECF No. 66-6). She also engaged in WMATA's internal processes for raising discrimination issues, corresponding with various WMATA officials in May, June, and July of 2008. (ECF Nos. 66-10; 66-11; 66-17). None of Plaintiff's complaints resulted in any resolution in her favor.

**B.  Plaintiff's Termination**

The union contract between WMATA and the Amalgamated Transit Union Local 689 (the "Union"), provides that employees

have the opportunity to apply for their preferred shifts twice per year, in June and December. (ECF No. 66-13, at 2). Shifts are then allocated to employees based on their preference and status within the union. Plaintiff indicated her preference for the day shift in December 2007, but the results of the December "pick" placed her on the evening shift. (ECF No. 66-18, at 1). Plaintiff requested an exception be made to move her from the evening shift to the day shift for child care reasons, and WMATA agreed to make the exception and keep Plaintiff on the day shift for the next six-month period. (ECF No. 66-16, at 2). In June 2008, Plaintiff again indicated her preference to remain on the day shift. (ECF No. 66-18, at 3). Again, the results of the "pick" placed Plaintiff on the evening shift. (ECF No. 52-1, at 2). Once again, Plaintiff requested to stay on the day shift, but, this time, WMATA denied Plaintiff's request. (*Id.*).

After being told that she would have to work the evening shift, Plaintiff wrote a letter to her supervisor Sam Prather, on June 26, 2008, stating if WMATA would not move her to a day shift, she would have "no alternative but to request a leave of absence without pay." (ECF No. 52-1, at 3). WMATA responded by once again denying her request to change shifts and notifying Plaintiff that it would not allow her to take a leave of absence. (*Id.* at 4). When her new shift schedule began on June 30, Plaintiff reported that she was sick and stopped coming to

work.  (*Id.* at 4-5).  On July 10, Plaintiff's shift supervisor James Thompson directed her to provide medical documentation to explain her absence.  (*Id.* at 5).  Plaintiff did not provide him with the medical documentation he requested.  Instead, in late July, Plaintiff's daughter attempted to submit a "Return to Duty" form on Plaintiff's behalf.  (ECF No. 66-16, at 3).  In the blank prompting Plaintiff to "describe briefly" her illness, Plaintiff had written, "I am tormented by the Management @ Greenbelt Annex all the time it NEVER STOPS!  It[']s one thing after another with these managers."  (ECF No. 66-21).  Mr. Thompson refused to sign the form, which did not meet WMATA's criteria for proper medical documentation under its absence policies.  (ECF Nos. 66-16, at 3; 66-25, at 2).  On August 29, Mr. Spencer sent a letter to Plaintiff, informing her of the medical absentee reporting requirements, directing her again to provide documentation, and warning her that failure to comply would be grounds for dismissal.  (ECF No. 52-1, at 6-7).  On September 5, Mr. Spencer emailed Plaintiff the same warning. (*Id.* at 8).  Plaintiff received the email, and she responded on September 8, telling Mr. Spencer not to call or e-mail her again because she was in treatment and was unaware of a return date. (*Id.* at 9).  On September 19, Mr. Spencer issued Plaintiff a final warning giving her another opportunity to provide medical documentation.  (*Id.* at 10).  Plaintiff failed to respond and

was fired on September 29. (*Id.* at 11-12). According to Mr. Spencer, Plaintiff was fired because she "fail[ed] to comply with the established procedures of [WMATA], the Collective [B]argaining Agreement between [the Union] and [WMATA,] and reasonable ongoing instructions to support [her] continued absence from duty." (*Id.*).

Plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") on October 6, 2008, for retaliation and discrimination on the basis of sex and disability. (*See* ECF No. 52-1, at 13). In her EEOC charge, Plaintiff stated that she had applied for a promotion to the position of AA mechanic in December 2007, and that, in January 2008, the candidates were posted. Eventually, five of her male co-workers were selected ahead of her despite her seniority over them. (*Id.*). She further stated that she was denied her shift pick in June 2008. (*Id.*). Lastly, Plaintiff stated her belief that WMATA fired her in retaliation for filing a union grievance. (*Id.*). The EEOC concluded its investigation on March 24, 2012, and Plaintiff was issued a Notice of Right to Sue on December 20, 2013. Plaintiff filed suit against the Union and WMATA in the Circuit Court for Prince George's County on March 18, 2014, and WMATA removed the case to this court on June 12, 2014. (ECF Nos. 1; 2).

The complaint asserts claims for: sex discrimination (Count I) and race discrimination (Count II) under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*; disability discrimination (Count III) under the Rehabilitation Act, 29 U.S.C. § 710, *et seq.*, as amended by the Americans with Disabilities Act ("ADA"), 29 U.S.C. § 791; age discrimination (Count IV) under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621; retaliation (Count V) under Title VII and the ADEA; wrongful discharge (Count VI); hostile work environment under Title VII, the ADEA, and the Rehabilitation Act (Count VII); denial of promotion and employment opportunities (Count VIII); denial of reasonable accommodation (Count IX); violations of the Rehabilitation Act of 1973, (Count X); and breach of contract (Count XI). On March 12, 2015, Plaintiff and the Union stipulated to the voluntary dismissal, pursuant to Fed.R.Civ.P. 41(a)(1)(A)(ii), of all claims against the Union. (ECF No. 30).

WMATA moved for summary judgment on October 14, 2016. (ECF No. 52). After the court granted Plaintiff three extensions of time to file an opposition (ECF Nos. 55; 57; 59), Plaintiff's counsel sought a sixty-day stay so that she could withdraw from representing Plaintiff and allow Plaintiff to secure new counsel. (ECF No. 60). WMATA consented to the stay and the court stayed the case. (ECF Nos. 60; 61). On February 3,

Plaintiff's counsel filed a motion to withdraw, and Plaintiff filed a motion for further extension of time either to find counsel or to proceed *pro se*. (ECF Nos. 62; 63). The court granted the motions. (ECF No. 64). On May 8, Plaintiff, proceeding *pro se*, filed her opposition (ECF No. 66), and WMATA replied (ECF No. 67).

## II. Standard of Review

WMATA moves for summary judgment pursuant to Fed.R.Civ.P. 56. Summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 249. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005), but a "party cannot create a genuine dispute of material fact through mere

speculation or compilation of inferences," *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted).

To prevail on a motion for summary judgment, the moving party generally bears the burden of showing that there is no genuine dispute as to any material fact. No genuine dispute of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element of her case as to which she would have the burden of proof. *Celotex*, 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is her responsibility to confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that there is a genuine issue for trial. *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D.Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014).

## III. Analysis[2]

### A. Voluntary Dismissal

WMATA first contends that Counts VI and XI should be dismissed because they related exclusively to the Union, which has now been dismissed. (ECF No. 52, at 9-10). Count XI for

---

[2] Neither Plaintiff's complaint nor her *pro se* response in opposition to the motion for summary judgment is a model of clarity. The court has attempted to construe her specific legal claims and the factual allegations that pertain to each claim in a way that provides consistency in light of the allegations in her EEOC charge, the allegations in the complaint, and the evidence presented in the documents attached to her response in opposition to the motion.

breach of contract did not mention WMATA and, in Plaintiff's opposition to the motion for summary judgment, she refers to that count as "Breach of Contract against Local 689." (ECF Nos. 2, at 9; 66-1, at 6). The stipulated dismissal of the Union therefore results in a dismissal of Count XI. Plaintiff's opposition refers to Count VI, however, as "Wrongful Discharge against WMATA and Local 689," and the complaint includes some facts related to WMATA. (ECF Nos. 2, at 8; 66-1, at 6). Moreover, although the legal basis for this claim is unclear, it makes much more sense that a claim for wrongful discharge would be brought against a plaintiff's employer, not her union. Accordingly, the voluntary dismissal of the Union is not sufficient to dismiss Count VI.

### B.   ADEA and ADA Claims

WMATA asserts that sovereign immunity bars Count IV, and parts of Counts V and VII, because it cannot be sued under the ADEA. (ECF No. 52, at 10). The Eleventh Amendment provides that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). The interstate compact that formed WMATA extends the immunity of the signatory states to WMATA and its officials "for any torts occurring in the performance of a governmental function." Md. Code, Transp. § 10-204, Art XVI, § 80 (2016); *see also Smith v.*

*WMATA*, 290 F.3d 201, 206 (4th Cir. 2002). Courts have repeatedly held that WMATA is immune from claims brought under the ADEA because they relate to "hiring, training, and supervision practices" that qualify as governmental functions. *See, e.g.*, *Maryland v. WMATA*, No. TDC-14-3397, 2015 WL 4389885, at *4 (D.Md. July 13, 2015) (collecting cases). Accordingly, Defendant is entitled to immunity as to Plaintiff's ADEA-based claims in Counts IV, V, and VII. Summary judgment will be granted as to these claims.

Courts have similarly held that WMATA is immune from suits under the ADA. *See, e.g.*, *Sewell v. WMATA*, No. GJH-16-2456, 2017 WL 992407, at *3 (D.Md. Mar. 13, 2017). Count IX of the complaint is titled "denial of reasonable accommodation." It is unclear from the complaint or Plaintiff's response whether she intends to bring this claim under the ADA or the Rehabilitation Act. If Plaintiff brings this claim under the ADA, WMATA is immune from suit. If she brings this claim under the Rehabilitation Act, it is redundant to Count X of the complaint, which alleges that WMATA "discriminated against [Plaintiff] by denying her reasonable accommodation for her disabilities . . . in violation of the Rehabilitation Act." (ECF No. 2, at 9).[3] Summary Judgment will therefore also be granted as to Count IX.

_____

[3] In her opposition to the motion for summary judgment, Plaintiff refers to Count IX as "Conspiracy to Inflict Harm by

## C.   Rehabilitation Act and Common Law Claims

WMATA argues that Plaintiff's claims under the Rehabilitation Act in Counts III, VII, and X are barred by the statute of limitations. (ECF No. 52, at 11). WMATA maintains that these claims are barred because she was fired on September 29, 2008, and did not file her suit until more than five years later on March 18, 2014. (*Id.* at 10-11). The Rehabilitation Act does not specify a limitation period. Because of this, courts "borrow" the most appropriate or analogous state statute of limitations and apply it to the federal cause of action. *See A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011). "Maryland courts apply the three-year limitations period governing general civil actions to [ ] Rehabilitation Act claims." *Jeandron v. Bd. of Regents of Univ. Sys. of Md.*, 510 F.App'x 223, 226 (4th Cir. 2013) (citations omitted); *see also Schalk v. Associated Anesthesiology Practice*, 316 F.Supp.2d 244, 251 (D.Md. 2004). Plaintiff's Rehabilitation Act claims are

---

WMATA." (ECF No. 66-1, at 6). It is not clear what the legal basis of this claim is, but, to the degree it differs from the failure to accommodate claim made in Count IX of the complaint, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion." *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F.Supp. 1053, 1068 (D.Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)); *see also Zachair Ltd. v. Driggs*, 965 F.Supp. 741, 748 n.4 (D.Md. 1997) (stating that the plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

therefore untimely, and summary judgment will be granted to WMATA as to these claims.[4]

Maryland's general three-year limitations period also applies in causes of action for wrongful discharge. *Mason v. Capitol Office Solutions*, No. PJM-13-2290, 2014 WL 4825931, at *4 (D.Md. Sept. 23, 2014) (citing *Knickman v. Prince George's Cty.*, 187 F.Supp.2d 559, 563-64 (D.Md. 2002)). Plaintiff's wrongful discharge claim in Count VI is therefore also barred because she failed to file her suit within three years of her termination.

### D.    Title VII Claims

### 1.    Plaintiff's EEOC Charge

Plaintiff's remaining claims in Counts I, II, V, VII, and VIII fall under Title VII. WMATA first argues that Plaintiff has failed to exhaust her administrative remedies as to her claim for race discrimination in Count II because she failed to include it in her EEOC charge. (ECF No. 52, at 17). "Before

---

[4]    Anticipating that Plaintiff would argue that the limitations period should be tolled for the period in which her EEOC charge was pending, WMATA pointed to *Harris v. O'Malley*, No. WDQ-13-2579, 2015 WL 996557, at *5 (D.Md. Mar. 4, 2015), in which the court held that a plaintiff was not entitled to equitable tolling during the pendency of her EEOC charge. Non-federal employees are not required to exhaust any administrative remedies under the Rehabilitation Act, *see id.*, and Plaintiff has neither argued that her claims should be tolled nor provided any evidence of "extraordinary circumstances" that would make it "unconscionable to enforce the limitation period," *see Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). Therefore, the limitations period will not be tolled here.

filing suit under Title VII, a plaintiff must exhaust her
administrative remedies by bringing a charge with the EEOC."
*Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir.
2000).   An EEOC charge must be "'sufficiently precise to
identify the parties, and to describe generally the action or
practices complained of.'" *Chacko v. Patuxent Inst.*, 429 F.3d
505, 508 (4th Cir. 2005) (quoting 29 C.F.R. § 1601.12(b) (2004)).
Because a failure to exhaust administrative remedies deprives
the federal courts of subject matter jurisdiction, the scope of
the plaintiff's right to file a federal lawsuit is determined by
the charge's contents.  *See Bryant v. Bell Atl. Md., Inc.*, 288
F.3d 124, 132 (4th Cir. 2002).  "Only those discrimination claims
stated in the initial charge, those reasonably related to the
original complaint, and those developed by reasonable
investigation of the original complaint may be maintained in a
subsequent Title VII lawsuit."  *Evans v. Techs. Applications &
Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996).  Thus, a plaintiff
fails to exhaust administrative remedies for her claims when
"h[er] administrative charges reference different time frames,
actors, and discriminatory conduct than the central factual
allegations in his formal suit." *Chacko*, 429 F.3d at 506.  This
limitation on the civil action is routinely applied where a
plaintiff's charge "alleges discrimination on one basis — such
as race — and he introduces another basis in formal litigation —

such as sex." *Id.* at 509. It also applies, however, when "the administrative charge alleges one type of discrimination — such as discriminatory failure to promote — and the claim encompasses another type — such as discrimination in pay and benefits." *Id.* (citing cases).

Plaintiff's EEOC charge alleges discrimination based on sex, disability, and retaliation. (ECF No. 52-1, at 13). Plaintiff left the box for race discrimination unmarked, and she made no mention of race in her description of the discrimination. (*Id.*). She thus failed to exhaust her administrative remedies as to any race-based claim, and Defendant is entitled to summary judgment as to Count II.

Likewise, Plaintiff did not give any indication in her EEOC charge that she was subjected to a hostile work environment. A plaintiff fails to exhaust administrative remedies on a hostile work environment claim where her EEOC charge describes only discrete incidents of alleged discrimination. *See Chacko*, 429 F.3d at 509 (citing *Dennis v. Cty. of Faifax*, 55 F.3d 151, 153, 156–57 (4th Cir. 1995)) ("[T]he allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct."). Here, Plaintiff described three distinct events in her EEOC charge: (1) the failure to promote her in January 2008; (2) the denial of her shift-change request in June 2008;

and (3) her ultimate termination. These allegations are discrete incidents and are the type of claim-inducing adverse employment actions that are not generally considered allegations of a hostile work environment. *See id.* at 511 n.2 (finding EEOC charges of failure to promote and a retaliatory demotion are not hostile work environment allegations) (citing *Evans*, 80 F.3d at 963-64 (finding EEOC charge of failure to promote did not encompass allegations of sexual harassment)). Therefore, Plaintiff did not exhaust her administrative remedies with respect to her hostile work environment claim, and WMATA is entitled to summary judgement as to Count VII.

## 2. Failure to Promote

WMATA raises one more procedural issue. It argues that the EEOC requires that a charge be filed within 180 days of the alleged discrimination. (ECF No. 52, at 12-13).[5] The statutory

---

[5] Generally, under Title VII, a charge of discrimination must be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1); *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 621 (2007). "This period is extended to 300 days in a deferral state, one in which 'state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency.'" *Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F.Supp.2d 658, 662 n.4 (D.Md. 2007) (quoting *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998)). Maryland is a "deferral state," but WMATA is immunized from suits under the applicable state law analogs to Title VII, such as the Maryland Human Relations Act, Md.Code Ann., State Government, §§ 20-606, 20-1013, 20-1202. "The Supreme Court has held that, in enacting Title VII, Congress properly abrogated the states' Eleventh Amendment immunity for such suits."

16

window applies to any "discrete acts" of discrimination, "such as termination, failure to promote, denial of transfer, or refusal to hire . . . . Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). This requirement precludes any claims arising out of events that occurred before April 9, 2008, because the charge was filed no earlier than October 6. (ECF No. 52-1, at 13).[6]

WMATA argues that all of the events related to Plaintiff's failure to promote claims occurred before April 9, 2008. The discriminatory conduct Plaintiff alleged in her EEOC charge and in Counts I and VIII of the complaint is the invalidation of her test scores and refusal to consider her for Position 006517. In Plaintiff's opposition to the motion for summary judgment, she notes that there were three male employees who were not forced to take the tests in succession that were promoted on April 19.

_____

*Stewart, Jr. v. Va. Com. Univ.*, 414 F.App'x 555, 556 (4th Cir. 2011) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456–57 (1976)). No such abrogation exists as to the state and local discrimination laws. Because Plaintiff could have filed her suit with a state or local agency, the 180-day limit applies. *See Whorton v. WMATA*, 924 F.Supp.2d 334, 345 (D.D.C. 2013); *cf. Dezaio v. Port Authority of N.Y. & N.J.*, 205 F.3d 62, 65 (2[d] Cir. 2000) (applying a 180-day exhaustion timeline because New York's anti-discrimination laws did not provide jurisdiction over the Port Authority, another interstate compact).

[6] Plaintiff signed and dated her EEOC charge on October 6.

17

(ECF No. 66-1, at 2 (citing ECF Nos. 66-2 ¶ 6; 66-17, at 1-2)).
Plaintiff seems to argue that, had her scores been valid, she
would have been eligible for these promotions, and that these
promotions thus qualify as further acts of discrimination.

The United States Court of Appeals for the Fourth Circuit
has established that it is the date of the "actual promotion
decision" as to a plaintiff "and not the date of ultimate
assignment (or any other date) that determines the timeliness of
[a plaintiff's] claims." *Williams v. Giant Food, Inc.*, 370 F.3d
423, 428 n.2 (4th Cir. 2004). In *Williams*, the date of the
"actual promotion decision" was the date that the other
employees were selected for the position and the plaintiff was
not. Here, those two things happened on different days:
Plaintiff was removed from consideration in December when her
results were invalidated, but the positions were not filled
until January and April, respectively. Because the alleged
discriminatory act was WMATA's refusal to consider her test
scores valid, Plaintiff's claim accrued on the date that her
scores were invalidated, not the date of promotion for each
other candidate. Construing each subsequent promotion to be a
new violation "would transform her non-selection claim into a
continuing violation that would occur indefinitely." *Spida v.*
*BAE Sys. Info. Sols.*, No. 1:16-cv-979, 2016 WL 7234088, at *5
(E.D.Va. Dec. 14, 2016) (emphasizing that, absent "delayed

18

discovery" of the discrimination, a claim accrues once a plaintiff has been "definitely rejected from the position," even if the position is never filled). Thus, Plaintiff's claim accrued when WMATA decided that Plaintiff's scores were invalid, or, at the latest, when she was notified of that decision and recognized it as discriminatory. *See Hanani v. N.J. Dep't of Envtl. Protection*, 205 F.App'x 71, 76 (3[d] Cir. 2006) (holding that claim accrued at the time plaintiff was told that her name was removed from the list of employees being considered for a promotion); *see also Taylor v. Republic Servs., Inc.*, No. 12-CV-00523-GBL-IDD, 2013 WL 487042, at *8 (E.D.Va. Feb. 6, 2013) (holding that a claim for discriminatory denial of bonus pay accrued at the time Plaintiff was notified that she would not be receiving a bonus, not the time when bonuses were actually paid).

Plaintiff took the test that was invalidated on December 3, 2007, and the record indicates that WMATA made the decision to invalidate her scores that day. (*See* ECF No. 66-7, at 2 (Mr. Loos stating that Mr. Spencer confirmed that the B- and C-level tests needed to be taken and that her scores were invalid that same afternoon)). Although neither party has provided a clear description of WMATA's promotion process, it appears that a list of candidates for AA-level positions was posted in January 2008 and that this list excluded Plaintiff and included Mr. Boykin

and the other three individuals who were promoted in April 2008. (ECF No. 66-29). By January 2008, Plaintiff also had filed a grievance related to the matter. (ECF No. 66-8). Thus, Plaintiff's claim accrued no later than January 2008, when she was aware that of the invalidation of her test scores and WMATA's refusal to consider her for the promotion. She therefore failed to comply with the 180-day time limit, and WMATA is entitled to summary judgment on her failure to promote claims in Counts I and VIII.

Plaintiff's arguments as to WMATA's denial of her request for a day shift fail for the same reason. In her EEOC charge, Plaintiff states that "[i]n June 2008, I was denied a classification pick which allows me to choose my shift and location, however, only AA mechanics were allowed this benefit." (ECF No. 52-1, at 13). Plaintiff seems to allege that the denial of a day shift was a consequence of her discriminatory non-promotion. This subsequent consequence of the discrete act of invalidating her test scores does not create a separate timely claim.[7] Therefore, Plaintiff cannot show sex discrimination on this ground.

---

[7] To the degree that Plaintiff argues that she was denied the day shift beginning in June 2008 not as a consequence of her non-promotion but rather directly because of her sex, she has failed to state a claim for discrimination. Such a claim would fall under the rubric of disparate treatment. To establish a *prima facie* case for a disparate treatment claim, a plaintiff

### E.    Plaintiff's Termination

Finally, WMATA moves for summary judgment on Plaintiff's retaliation claim in Count V.  To establish a *prima facie* case of retaliation, Plaintiff must show that:  (1) she engaged in protected activity; (2) her employer took an adverse employment action against her; and (3) there was a causal connection between the protected activity and the adverse employment action.  *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007); *Davis v. Dimensions Health Corp.*, 639 F.Supp.2d 610, 616 (D.Md. 2009).  Plaintiff contends that she was fired in retaliation for filing a union grievance based on the sex-discrimination surrounding the testing procedures.  It is undisputed that Plaintiff's discharge qualifies as an adverse

---

must show four elements: (1) that she is a member of a protected class; (2) that her job performance was satisfactory; (3) that she suffered adverse employment action; and (4) that she was treated differently from similarly situated employees outside the protected class.  *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).  Plaintiff has not presented evidence or argument that she was treated differently from other similarly situated employees.  Indeed, Plaintiff has repeatedly admitted that she was denied the day shift because of her employment status.  In her complaint, Plaintiff contends that she was discriminated against "because of her *employment classification*/gender when she was denied her opportunity of a shift pick."  (ECF No. 2, at 4 (emphasis added)).  In her opposition to the motion for she explained that she bid on a day shift, but that "other more senior Mechanic Helper Electrical employees bid and received all available day shift positions." (ECF No. 66-1, at 3).  She specifically acknowledged that she "was not selected for the day shift, based on her seniority." (*Id.*).  Accordingly, Plaintiff would not have a valid claim for sex discrimination based on WMATA's denying her the day shift.

employment action. (ECF No. 52, at 19). WMATA argues that she cannot show that she engaged in a protected activity or that there was a causal link between that activity and her termination.

Protected activity takes two forms, "opposition" or "participation." *Davis*, 639 F.Supp.2d at 617. "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Activities that constitute participation are outlined in the statute: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII. *Id.; see also* 42 U.S.C. § 2000e-3(a). Here, Plaintiff engaged in protected activity by filing a grievance related to the incident in December 2007 or January 2008 (*see* ECF No. 66-6 (formally denying grievance in January)), and by engaging in WMATA's internal processes for discrimination issue, including email correspondence with various WMATA officials on May 28, 2008 (ECF No. 66-10), June 18, 2008 (ECF No. 66-11), and July 14, 2008 (ECF No. 66-17). Plaintiff has therefore met her burden to show that she engaged in protected activity.

As for the final element of a retaliation claim, a causal connection, "the employer must have taken the adverse employment action because the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). Often a plaintiff will rely on the temporal proximity between the protected activity and the adverse employment action to draw an inference of causation. Here, Plaintiff's protected activities occurred between two and nine months before her termination. Moreover, there is evidence that Plaintiff was discharged for the intervening reason that Plaintiff was not coming to work or providing adequate information regarding her medical condition.

The last protected activity Plaintiff engaged in was an email to Ms. Beverly Pollard, a WMATA EEO Dispute Resolution Officer, on July 14, 2008. By that time, Plaintiff had already stopped coming to work. (ECF No. 52-1, at 4-6). In the lead up to Plaintiff's dismissal, WMATA sent Plaintiff several letters and emails requesting medical confirmation of her illness. (*Id.* at 5-9). Given that her purported illness coincided with her undesired shift change and that the only information Plaintiff eventually submitted described her illness as being "tormented by the Management," WMATA appears to have had good reason to seek further medical documentation. After months without seeing Plaintiff, Mr. Spencer warned her once more on September 19 that

if she did not provide medical confirmation, she would be terminated. (*Id.* at 10). When she failed to do so, she was dismissed "[b]ased on [her] failure to comply with the established procedures of [WMATA], the Collective [B]argaining Agreement between [the Union] and [WMATA] and [the] reasonable ongoing instructions to support [her] continued absence from duty." (*Id.* at 12). The timing and sequence of these letters in relation to Plaintiff's termination provides a sharp contrast to the attenuated timing between Plaintiff's termination and her grievance and complaints. Moreover, the relationship between the letters and her termination corresponds with WMATA's contention that Plaintiff's failure to come to work or provide medical documentation was the legitimate nondiscriminatory reason for her termination. Plaintiff has produced no evidence that this reason was false or that it is pretextual. *Davis*, 639 F.Supp.2d at 617 (citing *Matvia*, 259 F.3d at 271). Therefore, summary judgment will be granted as to Count V.

## IV. Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendant the Washington Metropolitan Area Transit Authority will be granted. A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge
